UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(CINCINNATI)

| | | |
|---|---|---|
| CLARENCE STEPHENS, JR. and KIMBERLY STEPHENS, both in their individual capacity and as next friend of their minor children, Ozrielle and Cashious Stephens<br>1721 Fallbrook Lane<br>Cincinnati, Ohio 45240<br><br>    Plaintiffs,<br><br>v.<br><br>HAMILTON COUNTY JOBS AND FAMILY SERVICES<br>222 East Central Parkway<br>Cincinnati, Ohio 45202<br><br>    and<br><br>HAMILTON COUNTY<br>c/o HAMILTON COUNTY BOARD OF COMMISSIONERS<br>Hamilton County Commissioner<br>138 East Court Street<br>Room 603, County Administration Building<br>Cincinnati, Ohio 45202<br><br>    and<br><br>TODD PORTUNE<br>Hamilton County Commissioner<br>138 East Court Street<br>Room 603, County Administration Building<br>Cincinnati, Ohio 45202<br><br>    and | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. **1:12 CV 603**<br><br>JUDGE **J. BARRETT** |

**CHRIS MONZEL**
**Hamilton County Commissioner**
**138 East Court Street**
**Room 603, County Administration Building**
**Cincinnati, Ohio 45202**

    and

**GREG HARTMANN**
**Hamilton County Commissioner**
**138 East Court Street**
**Room 603, County Administration Building**
**Cincinnati, Ohio 45202**

    and

**ERIN HUNT**
**Hamilton County Jobs and Family Services**
**222 East Central Parkway**
**Cincinnati, Ohio 45202**

and

**ERIN ECKERT**
**Hamilton County Jobs and Family Services**
**222 East Central Parkway**
**Cincinnati, Ohio 45202**

and

**JOHN DOES 1 AND 2**

    Defendants.

## COMPLAINT

NOW COMES Plaintiffs, Clarence and Kimberly Stephens, by and through counsel, in their individual capacity and as next friends of their natural children, Ozrielle and Cashious Stephens, and hereby submit the following as their Complaint:

## INTRODUCTION

1. This is civil rights action for damages brought against all Defendants except for pertaining to the placement and treatment of minors, Ozrielle and Cashious Stephens, which almost resulted in the death of Cashious Stephens.

2. Plaintiffs' constitutional due process rights to be protected by the State from harm have been violated by the grossly negligent, wanton and reckless conduct of Defendants in failing to adhere to sufficient procedures necessary to determine who may temporarily supervise and care for the children of parents who have been temporarily incarcerated for hours in connection with a call to police for domestic violence.

3. Plaintiffs' constitutional due process rights to be protected by the State from harm have been violated by the grossly negligent, wanton and reckless conduct of Defendants in failing to implement proper reporting of child endangerment and abuse by foster parents employed and/or selected by the Hamilton County Jobs and Family Services ("HCJFS"), failure to properly investigate and monitor activities of the foster parents when alerted to the special needs of Cashious Stephens.

4. Plaintiffs' constitutional due process rights to be protected by the State from harm have been violated by the grossly negligent, wanton and reckless conduct of Defendants in retaliating against Plaintiff Kimberly Stephens for not voluntarily turning over custody of her children to HCJFS by seeking and obtaining custody of the children at the same time as Plaintiffs Kimberly and Clarence Stephens were being released from jail, thereby alleviating the need for substitute supervision of the children.

## JURISDICTION

5. This action is brought pursuant to 42 U.S.C. §§1983, 1988, as well as the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, the "penumbras" of the Federal Bill of Rights, Articles I, §§1, 2, 16 and 19(a) of the Ohio Constitution, and Ohio state law.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (Federal Question) and 28 U.S.C. §1334 (Civil Rights).

7. This court has supplemental jurisdiction with respect to the state claims pursuant to 28 U.S.C. §1367.

8. Venue lies in the Southern District of Ohio, the judicial district in which the claim arose pursuant to 28 U.S.C. §1341.

9. The matter in controversy exceeds, exclusive of interest, $75,000.00.

## PARTIES

10. Plaintiff Clarence Stephens, Jr. is an African-American living in Hamilton County, Ohio who has been married to Plaintiff Kimberly Stephens for almost 13 years. He is the natural and custodial father of their two children, Cashious and Ozrielle Stephens, now ages 8 and 10, respectively). Mr. Stephens brings claims in his individual capacity and on behalf of his children.

11. Plaintiff Kimberly Stephens is an African-American living in Hamilton County, Ohio who is the natural and custodial mother of Ozrielle and Cashious Stephens. Mrs. Stephens brings claims in his individual capacity and on behalf of his children.

12. Defendant HCJFS is the provider of children's foster care services to the residents of Hamilton County, Ohio. HCJFS is responsible for training and supervising the actions of its employees concerning, but not limited to, the following: determining whether foster care is necessary because suitable family members may be available; selecting foster care that is able to meet the special needs of a child; providing adequate services and treatment for children in foster care according to recognized standards of care; timely identifying when those standards of care are not being met; recognizing harmful and hazardous situations in foster care; and reporting and protecting children from abusive or negligent foster parents.

13. Defendant Moira Weir is the Director of HCJFS. She is responsible for the review and approval of the operations of HCJFS, and supervising the performance of that agency. This action is brought against her individual capacity as a Bivens claim.

14. Defendant Erin Hunt is an intake worker for HCJFS. This action is brought against her individually and in her official capacity.

15. Defendant Erin Eckert is an employee of HCJFS and is Defendant Hunt's supervisor. This action is brought against her individually and in her official capacity.

16. Defendants Todd Portune, Chris Monzel, and Greg Hartmann are the duly elected and/or appointed County Commissioners for Hamilton County. As county commissioners, these defendants are responsible for the review and approval of the operations of HCJFS, as well as supervising the adequate performance of HCJFS within Hamilton County. This action is brought against them in their individual and official capacities.

17. Defendant Hamilton County is a political subdivision in the State of Ohio that has the authority of being sued in its corporate name. Hamilton County employs, controls, and/or has the right to control Defendants HCJFS, Weir, Hunt, Eckert, and John Does 1 and 2. These individual Defendants acted within the course of their employment and/or agency and under color of state law.

18. Defendant John Does 1 and 2 are foster parents selected, certified, employed and supervised by HCJFS that provided foster care to Ozrielle and Cashious Stephens in August 2011.

19. The above named employees of Defendant Hamilton County and/or HCJFS are individuals who acted under color of state law and are responsible for Plaintiffs' damages in both their individual and official capacities.

## BACKGROUND

20. Plaintiffs Kimberly and Clarence Stephens have been married for over 13 years and have two beautiful children, Ozrielle and Cashious.

21. Cashious is epileptic and developmentally delayed, and displays symptoms of autism. He requires numerous medications, various therapies, and constant supervision. A special needs child, Cashious requires specialized attention to effectively communicate, eat meals, and accomplish other tasks that are routine for most children his age.

22. Like many marriages, Kimberly and Clarence's marriage has its ups and down. And although they have had arguments in the past, no arguments resulted with the involvement of third parties, save one.

6

23. On Sunday, August 7, 2011, Kimberly Stephens called the police to her home after her husband would not unlock the door to let her inside after an argument and brief physical altercation.

24. A police officer arrived to the scene and decided to send both Kimberly and Clarence to jail on domestic violence charges, even though the couple begged and pleaded with the officer not to take both parents because son was a special needs child. One parent was necessary to ensure that Cashious functioned as routinely as possible.

25. Unfortunately, their requests fell upon deaf ears, and the children were taken to stay with their maternal grandfather as their mother and father were taken to jail and arrested in the early morning of August 8, 2011.

26. On August 8, 2011, Erin Hunt visited Kimberly and attempted to convince her to voluntarily turn over custody of the children to HCJFS after they determined that the grandfather then watching the children was not suitable. Kimberly refused, over the Hunt's strenuous objection and argument, and informed Hunt that she would be out of the jail the following day at that morning's 9 o'clock arraignment. Kimberly also gave Hunt her mother's and sister's names as people who could watch the children in the meantime. Kimberly also directed Hunt to check with her husband to contact his mother or sister to watch the children. Kimberly explained Cashious' special needs.

27. Hunt refused to contact Clarence about his sister and mother's ability to watch the children.

28. Instead of following up on Kimberly's direction, HCJFS removed the children from the grandfather's home and delivered them to John Does 1 and 2.

7

29. On August 9, without contacting Clarence or any other family members of the children to see if they could watch them, HCJFS filed a complaint in juvenile court asserting abuse and dependency of the children, and a motion seeking interim custody. Supporting the motion was an affidavit from Hunt falsely stating that "The caseworker inquired as to alternative placements for the children and discovered that there are no known appropriate relatives that are able to care for the children."

30. Based upon these actions, the court granted HCJFS temporary custody of the children.

31. Kimberly and Clarence Stephens were are arraigned separately about at about the same time on the morning of August 9, 2011 as the hearing was taking place in juvenile court on interim custody. Both were released on their own recognizance. Ultimately, they both defeated the charges of domestic violence.

32. Immediately upon release, Kimberly and Clarence separately went to the offices of HCJFS in an effort to locate and retrieve their children. When they learn what had been done by the agency, both were justifiably angry. Defendants Eckert and/or Hunt even stated that it was their intent to remove the children from the custody of their parents permanently.

33. The children remained in custody with HCJFS and foster parents John Does 1 and 2 until Friday, August 12, 2011, when the juvenile court finally released the children back to their parents. The entire week, HCJFS informed the parents that their children were doing fine. In fact, HCJFS supervisor falsely testified at the August 12, 2011 hearing that they were doing fine. Based on this and other false testimony, the

8

court prevented the Stephens from taking care of the kids together in the same household for a number of months.

34. A half hour after his parents received Cashious back, Cashious had to be rushed to a hospital emergency room for medical care. He suffered from severe dehydration and had lost 10 pounds in 4 days. He only weighed 46 pounds when he arrived at the hospital.

35. Even still, when the parents arrive to pick up the children from HCJFS custody, Hunt told the parents, "Don't overreact. He's just a little tired."

## COUNT I

36. Defendants have under the color of state law, deprived Plaintiffs of rights, privileges, and amenities secured by the United States Constitution, including, but not limited to the First, Fourth and Fourteenth Amendment to the United States Constitution and .

37. The wrongful conduct of Defendant employees and foster parents was the direct result of policies, practices, and customs that allowed HCJFS to remove children from their parents' custody without cause, to intentionally or negligently place them with inadequate foster parents, to fail to oversee their care, to retaliate against parents' for refusing to voluntarily sign over custody of their children and to make false accusations in court.

38. Defendants failed to establish adequate policies and procedures to properly train and/or supervise defendant employees and foster parents.

39. These acts and/or omissions directly and proximately resulted in the physical injuries and emotional trauma that Cashious sustained.

40. As a result of these actions, Plaintiffs suffered emotional trauma, physical injury, embarrassment, monetary and other damages.

## COUNT II

41. Defendants, through their reckless and indifferent behavior, intended to cause Plaintiffs emotional distress.

42. The conduct of Defendant employees and foster parents were so extreme and outrageous as to go beyond the bounds of decency and was such that the conduct can be considered utterly intolerable in a civilized society.

43. The mental anguish suffered by Plaintiffs as result of Defendants' actions was so serious and of a nature no reasonable person could be expected to endure.

## COUNT III

44. Defendants conspired to violate Plaintiffs' federal and state constitutional rights, to violate state law and to cause injury and damages to Plaintiffs.

## COUNT IV

45. Defendants' actions constitute actionable negligence under Ohio law.

## COUNT V

46. Defendants maliciously instituted legal proceedings against Plaintiffs.

47. Defendants lacked probable cause for the filing of the prior legal proceedings.

48. The prior proceedings terminated in Plaintiffs' favor.

49. Plaintiffs' persons were seized during the course of the prior proceedings.

50.     Plaintiffs sustained damages as a result of Defendants' malicious prosecution of Plaintiffs including but not limited to physical, emotional, and monetary damages.

## COUNT VI

51.     Defendants set in motion legal proceedings against Plaintiffs in proper form and with probable cause.

52.     The proceedings were perverted by Defendants to attempt to accomplish ulterior purposes for which it was not designed, including but not limited to: retaliating for validly exercising their constitutional right to free speech, retaliating for Plaintiffs refusal to submissively accept Defendants' wrongdoing and racially biased views of how Black families interact, and covering up failures to act and the giving of false testimony.

53.     Direct damage resulted to Plaintiffs from the wrongful abuse of process.

## COUNT VII

54.     Defendants' actions constituted negligent infliction of emotion distress.

## COUNT VIII

55.     Defendants' actions were willful, unlawful, malicious, and done in wanton disregard of the rights and findings of Plaintiffs.

56.     Plaintiffs are entitled to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief against Defendants:

a. Compensatory damages in an amount consistent with evidence adduced at trial;

b. punitive damages;

c. reasonable attorneys' fees;

d. such other further relief as this Court deems reasonable, just or equitable.

Respectfully submitted,

/s/Rasheed Simmonds
Rasheed A. Simmonds (Ohio 0067797)
RASHEED ASANI SIMMONDS LLC
119 East Court Street, Suite 302
Cincinnati, Ohio 45202
(513) 273-7862
(513) 297-7993 FAX
ras@simmmondslaw.com

Trial Attorney for Plaintiffs

## JURY DEMAND

Plaintiff hereby demands trial by jury on all triable issues.

Respectfully submitted,

/s/Rasheed Simmonds
Rasheed A. Simmonds (Ohio 0067797)
RASHEED ASANI SIMMONDS LLC
119 East Court Street, Suite 302
Cincinnati, Ohio 45202

(513) 273-7862
(513) 297-7993 FAX
ras@simmmondslaw.com

Trial Attorney for Plaintiffs