## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Clarence Stephens, Jr.,

        Plaintiff,                            Case No.  1:12cv603

        v.                                  Judge Michael R. Barrett

Hamilton County Jobs and
Family Services, *et al.*,

        Defendants.

### ORDER & OPINION

This matter is before the Court upon Defendant Eryn Hunt's Motion for Judgment on the Pleadings.  (Doc. 28.)  Plaintiff has filed a Response in Opposition (Doc. 30) and Defendant has filed a Reply (Doc. 31).

### I.      BACKGROUND

Plaintiffs Clarence and Kimberly Stephens brought this action in their individual capacity and as next friends of their natural children, O.S. and C.S.  (Doc. 25).

According to the Second Amended Complaint, on the morning of August 9, 2011, Plaintiffs were both arrested at their home on charges of domestic violence.  O.S. and C.S. were taken to their nearest relatives' home, which was their grandfather.  However, their grandfather is elderly and was not able to provide long-term care for the children.

It is further alleged in the Second Amended Complaint that because both parents were arrested, Hamilton County Ohio's Department of Jobs and Family Services ("HCJFS") was notified.  Defendant Eryn Hunt was employed by HCJFS and assigned to the case.  Hunt went to the Hamilton County jail to speak with Mrs. Stephens about

family members who could watch O.S. and C.S. Mrs. Stephens informed Hunt that there were several relatives who were able to care for the children, and also advised Hunt that C.S. is severely disabled and requires special attention and particularized care. However, Hunt did not process these relatives in an effort to clear them to receive the children. Instead, Hunt approached Hamilton County Juvenile Court prosecutors or other HCJFS personnel and provided false information to them about the case. Hunt also falsely obtained an "on duty" magistrate's permission to seize the children by providing false information through a "telephone EO" or telephone emergency order. (See Doc. 29-1, PAGEID # 145). The false information included a statement that there were no relatives who could watch the children, the amount of time Plaintiffs would be detained and that an emergency situation existed.

On the morning of August 9, 2011, the Hamilton County Juvenile Court ordered the children into the custody of HCJFS. That same morning, Plaintiffs were released from jail. Plaintiffs did not reacquire custody of the children until August 12, 2011.

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983. Plaintiffs bring an unreasonable seizure claim under the Fourth Amendment on behalf of O.S. and C.S.; and a claim for violation of the right to familial association under the Fourteenth Amendment on behalf of themselves and O.S. and C.S.

## II.    ANALYSIS

### A. Standard of Review

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion

for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Id.* (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009)). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 556 (2007)).

Hunt also argues that she is entitled to dismissal under Federal Rule of Civil Procedure 12(b)(1) because this Court does not have jurisdiction over decisions made by the Hamilton County Court of Common Pleas, Juvenile Division. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002) (citing *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990)); s*ee also Hutcherson v. Lauderdale Cnty.,*

*Tennessee*, 326 F.3d 747, 755 (6th Cir. 2003) (explaining that the *Rooker-Feldman* doctrine and res judicata "'are not coextensive,'" and *Rooker–Feldman* should be considered first since its application strips federal courts of jurisdiction and the ability to hear a *res judicata*, or other affirmative, defense.") (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).  Therefore, the Court will first address Hunt's arguments related to jurisdiction.

### B. *Rooker-Feldman* Doctrine

Hunt argues that this Court does not have jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine.  This doctrine derives its name from the Supreme Court decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  *Rooker–Feldman* is a narrow doctrine, "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Denni*s, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)).  "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

In *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, a mother brought claims on behalf of herself and her minor children alleging that the defendants violated their constitutional rights when they entered her home by force and removed

4

her two children.  606 F.3d 301 (6th Cir. 2009), *cert. denied*, 134 S. Ct. 2696 (U.S. 2014).  The Sixth Circuit held that *Rooker-Feldman* did not bar the claims because the plaintiffs did not seek review or reversal of the juvenile court's decision, but instead focused on the conduct of the defendants "that led up to" the juvenile court's decision to award temporary custody to the county.  *Id.* at 310.  The Sixth Circuit noted that the plaintiffs were seeking "compensatory damages for alleged unconstitutional conduct by a government agency, not injunctive or other equitable relief, because any action concerning their return to their mother's custody became moot when they were reunited with their mother in January 2003 and the Juvenile Court complaint was dismissed in 2005." *Id.*

As *Kovacic* makes clear, *Rooker-Feldman* does not apply in this case.  Plaintiffs are not seeking to reverse the Hamilton County Juvenile Court's decision to order the children into the custody of HCJFS.  Instead, Plaintiffs are challenging the conduct of Hunt that led up to the Juvenile Court's decision.  Therefore, Hunt's motion is denied to the extent that it argues that this Court does not have jurisdiction based on the *Rooker-Feldman* doctrine.

### C. *Res judicata*

Hunt also argues that *res judicata* bars Plaintiffs' claims.  Hunt explains that all the issues concerning the initiation of the action in Juvenile Court were necessarily litigated in that court.  Hunt points out that the magistrate found that there were no relatives who were willing or able to provide care for the children.

A federal court hearing a case based on diversity jurisdiction applies the law of the state in which it sits in determining the application of *res judicata*.  *Ventas, Inc. v.*

*HCP, Inc.*, 647 F.3d 291, 303 (6th Cir. 2011) (citing *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007)). Under Ohio's rules of civil procedure, the defense of *res judicata* may not be raised by a motion to dismiss. *Jim's Steak House, Inc. v. City of Cleveland*, 688 N.E.2d 506, 508 (Ohio 1998). However, the Federal Rules of Civil Procedure are to the contrary. *See Apseloff v. Family Dollar Stores, Inc.*, 1:06-CV-133, 2006 WL 1881283 (S.D. Ohio July 6, 2006) (citing *DeNune v. Consolidated Capital of North America, Inc.*, 288 F.Supp.2d 844 (N.D.Ohio 2003)).

The Sixth Circuit has interpreted Ohio's doctrine of claim preclusion as having four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011) (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

The Court finds that *res judicata* is not applicable here. As one court has explained, social workers are not parties to custody proceedings under Ohio Revised Code § 2151.31. *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 809 F. Supp. 2d 754, 773 (N.D. Ohio 2011), *aff'd and remanded*, 724 F.3d 687 (6th Cir. 2013). Instead, it is the county, acting as an arm of the State of Ohio which brings the custody action. *Id.* In addition, there is no privity between a social worker involved in a custody proceeding and the county because there is no identity of interest. *Id.* Therefore, Hunt cannot rely on the doctrine of *res judicata* as a basis for dismissal of Plaintiffs' claims.

**C.** **Absolute immunity**

Hunt argues that she is entitled to absolute immunity for any action she took in

initiating judicial proceedings. The Sixth Circuit has explained:

> "[U]nder certain circumstances, social workers are entitled to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). The scope of this immunity is akin to the scope of absolute prosecutorial immunity, *id.*, which applies to conduct "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th

Cir. 2011). "The analytical key to prosecutorial immunity . . . is advocacy—whether the

actions in question are those of an advocate." *Id.* (quoting *Holloway*, 220 F.3d at 775).

Therefore, "social workers are absolutely immune only when they are acting in their

capacity as legal advocates—initiating court actions or testifying under oath—not when

they are performing administrative, investigative, or other functions." *Id.*

Plaintiffs allege that Hunt took the following actions:

12. Defendant Hunt never processed any of the Plaintiffs relatives in an effort to clear them to receive the children.

13. Instead, defendant Hunt approached Juvenile Court prosecutors or other HCJFS personnel and provided false information to them regarding her work on the children's case. Hunt also falsely obtained an "on duty" magistrate's permission to seize the children by providing false information to said magistrate via a "telephone EO" or telephone emergency order.

14. Specifically, she falsely advised that there were no relatives who could watch the children while Mr. and Mrs. Stephens were detained in jail as well as falsely reported the expected length of time the parents would be detained at the local jail.

15. Further, Hunt falsely advised that an emergency situation existed regarding the children even though they were perfectly safe (prior to Hunt seizing them) and in a familiar environment with their grandfather.

16. The lack of acceptable relatives or an emergency situation was a

necessary factual predicate to obtaining a court order or otherwise having legal cause for temporary removal of the children from their family.

17. Had defendant Hunt told the truth to her supervisors or the relevant prosecutors or the "on duty" magistrate the children would not have been seized from their family as no Juvenile Court action could have properly been filed. Moreover HCJFS policy prohibits an emergency seizure of the children under the circumstances that existed when defendant sought emergency custody of the children.

(Doc. 25). For the most part, the actions described fit squarely within those of a legal

advocate, and are not administrative, investigative or other functions. However, as the

Sixth Circuit has recently instructed:

To determine whether absolute immunity applies, the court must precisely identify the wrongful acts alleged and classify them according to their function. *Pittman*, 640 F.3d at 724–25; *Rippy* [*v. Hattaway*], 270 F.3d [416], 421–22 [(6th Cir. 2001)]. Because the claims are focused on the *ex parte* orders entered September 28, it is Vega's conduct in connection with the initial Petition that must be examined. The district court was certainly correct in concluding that Vega acted in her capacity as a legal advocate in filing the Petition on behalf of DCS, and making statements, sworn or not, reflecting her professional judgment and opinion (including statements regarding the immediacy of the threat of harm to the children and the best interest of the children). As *Kalina* explained, absolute immunity applies to acts involving the exercise of professional judgment such as "her determination that the evidence was sufficiently strong to justify a probable cause finding, . . . her presentation of the information and the motion to the court" and "even the selection of particular facts to include in the certification to provide the evidentiary support for the finding of probable cause[.]" *Kalina* [*v. Fletcher*], 522 U.S. [118], 130 [(1997)].

However, the exercise of professional judgment "could not affect the truth or falsity of the factual statements themselves." *Id.* Absolute immunity will not bar Young's claims to the extent he has limited the wrongful acts complained of to Vega's swearing to the truth of the facts that provided the evidentiary basis for the juvenile court's probable cause determination. *See Humphrey*, 462 F. App'x 532–33; *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (when "official switches from presenting the charging document to vouching personally for the truth of the contents of the document . . . absolute immunity must give way to a qualified immunity inquiry").

*Young v. Vega*, 13-6487, 2014 WL 3733599, *3-4 (6th Cir. July 30, 2014). Therefore, to

8

the extent that Plaintiffs allege that Hunt testified falsely that there was a lack of acceptable relatives or that an emergency situation existed, Hunt is not entitled to absolute immunity.

### D. Qualified immunity

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)).  In order to determine whether qualified immunity applies, courts employ a two-part test: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) "whether that constitutional right was clearly established such that a 'reasonable official would understand that what he is doing violates that right.'" *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443–44 (6th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Plaintiffs claim that the children were unreasonably seized in violation of the Fourth Amendment and their right to familial association under the Fourteenth Amendment was violated.

### 1. Fourth Amendment

The Sixth Circuit has outlined Fourth Amendment requirements applicable to social workers:

> "[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement."  *Andrews v. Hickman Cnty.*, 700 F.3d 845, 859 (6th Cir. 2012).  "This would simply mean that social workers would have to obtain consent, have sufficient grounds to believe that

exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes." *Id.* at 859-60.

*Kovacic*, 724 F.3d at 695.  The Sixth Circuit has held that it was clearly established in 2002 that Fourth Amendment warrant requirements applied to the removal of children from their homes by social workers.  *Id.* at 699.

Plaintiffs' Fourth Amendment claim is based on the unreasonable seizure of the children, not a warrantless entry or search.  As one federal court has observed: "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.' " *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011) (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 605 (2d Cir. 1999)); *see also Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) (explaining that the Fourth Amendment requires that the protective seizure of children occur pursuant to a court order, or, in the absence of a court order, pursuant to probable cause or exigent circumstances).  In this instance, Hunt took custody of the children pursuant to a court order under Ohio Revised Code 2151.31(A)(1).[1]  However, Plaintiffs allege that Hunt provided false information to the magistrate in order to obtain the order.

---

[1]The statute provides:

(A) A child may be taken into custody in any of the following ways:

(1) Pursuant to an order of the court under this chapter or pursuant to an order of the court upon a motion filed pursuant to division (B) of section 2930.05 of the Revised Code . . .

Ohio Revised Code 2151.31(A)(1).

In an analogous case, the Sixth Circuit has explained that "an investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest."  *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)).  The Sixth Circuit explained further:

> To overcome an officer's entitlement to qualified immunity, however, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause.  *See Hill* [*v. McIntyre*], 884 F.2d [271,] 275 [(6th Cir. 1989)] (applying test set forth in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1973), to evaluate a § 1983 claim); *see also Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000); *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995); *Packer v. City of Toledo*, 1 Fed.Appx. 430, 433–342 (6th Cir. 2001) (unpublished opinion) (noting that the materiality of the false information used to procure a search warrant was a key issue in deciding whether to grant qualified immunity).

*Id.*; *see also Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir.), *cert. denied*, 499 U.S. 976 (1990) (analogizing the information provided by a social worker to obtain orders for placement or entry to the standards for probable cause for a warrant articulated in *Franks v. Delaware*, 438 U.S. 154 (1978)).

Taking the allegations in the Second Amended Complaint as true, Plaintiffs state that Hunt obtained a magistrate's permission to seize the children by providing false information.  According to Plaintiffs, Hunt told the magistrate that there were no relatives who could watch the children.  Hunt also falsely reported the expected length of time that the parents would be detained, and falsely advised the magistrate that an emergency situation existed, even though the children were perfectly safe.  Plaintiffs claim that the lack of acceptable relatives or an emergency situation was a necessary factual predicate to obtaining the order, and if Hunt had told the truth, the children would

11

not have been seized from their family.  These allegations support a claim that Hunt stated a deliberate falsehood which was material to the finding of probable cause for the magistrate's order.  Therefore, at this stage of the proceedings, Hunt is not entitled to qualified immunity on Plaintiffs' claim of unreasonable seizure under the Fourth Amendment.  *Accord Snell*, 920 F.2d at 676 (social workers who obtained a court order to remove children by deliberately providing false information are not entitled to qualified immunity).  Therefore, at this time, Hunt is not entitled to qualified immunity on Plaintiffs' Fourth Amendment claim.

### 2.  Fourteenth Amendment

Plaintiffs' Fourteenth Amendment claim is based on a violation of their children's right to familial association.  The Sixth Circuit has recently explained:

> The Due Process Clause of the Fourteenth Amendment guarantees that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  Parents have a fundamental liberty interest in family integrity—including the right to the care, custody and control of their children—that is protected by the substantive and procedural due process guarantees of the Fourteenth Amendment.  *See Kottmyer v. Maas*, 436 F.3d 684, 689–90 (6th Cir. 2006); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

*Young*, 2014 WL 3733599, at *4.  Plaintiffs do not appear to bring a procedural due process claim, and instead only base their claim on a deprivation of their fundamental liberty interest in family integrity.

However, where a juvenile court has the ultimate decision making authority with respect to placement and custody of a child, the substantive deprivation is effected by the court, and not the social worker petitioning for such relief.  *Id.* at *4-5 (citing *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728-29 (6th Cir. 2011)).  Here, the magistrate issued an order under Ohio Revised Code 2151.31(A)(1).

12

Therefore, any substantive due process violation was perpetrated by the court, and not Hunt.  Because Plaintiffs fail to state a claim that Hunt violated Plaintiffs' Fourteenth Amendment rights, Hunt is entitled to qualified immunity on that claim.  Accordingly, Plaintiffs' Fourteenth Amendment claim against Hunt is DISMISSED.

### E. **Standing**

Hunt makes an additional argument with regard to Plaintiffs' Fourth Amendment claim: Plaintiffs' lack standing to bring a claim based on a seizure which occurred out of their physical presence.

"A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf." *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 980 (2013) (citing *Tenenbaum*, 193 F.3d at 601, n. 13); *see also Reguli v. Guffee*, No. 08–CV–0774, 2009 WL 425020, at *10 (M.D.Tenn. Feb. 19, 2009) (dismissing *pro se* plaintiff's Fourth Amendment claim based on the removal and interrogation her child from her public school because the child was not a plaintiff or purportedly represented by the plaintiff), *aff'd*, 371 Fed.Appx. 590 (6th Cir. 2010).

In the Second Amended Complaint, Plaintiffs state that they are bringing their claims "in their individual capacity and as next friends of their natural children."  (Doc. 25, PAGEID #110).  To the extent that Plaintiffs bring their Fourth Amendment claims in their individual capacity, those claims are DISMISSED.  However, to the extent that Plaintiffs bring their Fourth Amendment claims on behalf of their children, Plaintiffs have standing to bring those claims.

III.  <u>**CONCLUSION**</u>

Based on the foregoing, it is hereby **ORDERED** that Defendant Eryn Hunt's Motion for Judgment on the Pleadings (Doc. 28) is **DENIED in PART and GRANTED in PART**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT
